UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THORNBURGH INSULATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14:cv1274 SNLJ |
| | ) | |
| GEA PROCESS ENGINEERING, INC., | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM AND ORDER

Plaintiff Thornburgh Insulation, Inc. filed this lawsuit for breach of the parties' agreement and for *quantum meruit* and suit on account in the alternative. Plaintiff had contracted with defendant GEA Process Engineering, Inc. for plaintiff to furnish labor, materials, fixtures, and machinery for certain improvements made to property owned by a third party in Pevely, Missouri (the "project" or "Pevely project"). GEA was the general contractor for the project and Thornburgh was a subcontractor. Plaintiff alleges it performed the agreed-upon services, demanded payment from GEA in the amount of $341,242.31, and that GEA refused to pay. Plaintiff thus filed this lawsuit in this Court.

Defendant notified plaintiff that it had elected to arbitrate the disputes in Washington, D.C. based on the parties' arbitration agreement. Plaintiff refuses to arbitrate, claiming it never agreed to do so. Defendant has thus moved to compel arbitration and seeks a stay of this litigation in the interim (#16). That motion has been fully briefed and is now ripe for disposition.

## I. Factual Background

Plaintiff agreed to perform services for defendant at a certain price on April 16, 2013. The agreement was negotiated by John Thornburgh on behalf of plaintiff and Alex Duvan for defendant over the course of several weeks. Plaintiff sent defendant a proposal by email and defendant sent plaintiff a purchase order accepting the proposal, also by email. John Thornburgh then e-mailed Craig Barrett of GEA stating

> Hello Craig,
> We are in receipt of the PO for the project please reference our proposal letter that has been the document everyone has been working with that includes the specifics as we have discussed together to come to an agreement on the scope required by GEA. We look forward to a successful project together.
> Thank you
> John B. Thornburgh

The purchase order presented by defendant had small font at the bottom of the third page that stated that GEA's "STANDARD TERMS AND CONDITIONS APPLY TO THIS ORDER." No one signed the purchase order or any other document.

Two days after the agreement was reached, defendant's Ricky Kellis, a GEA project manager, sent plaintiff's, Robert Thornburgh, an e-mail attaching a number of documents related to the project. Robert Thornburgh was a project manager and had not been involved in the bidding or negotiation process for the project. The e-mail from Kellis stated only "Please see attached, I have also included a blank copy of a generic JHA, to give you an idea" and had two attachments, which were named "7012-0001 Insulation Specification.zip" and "JHA pevely3-20.doc".

Robert Thornburgh explains in his declaration that he used the "JHA pevely3-20" document to generate a site-specific JHA for his company's methodologies and protocols. (The Court notes that although the parties do not define "JHA," it appears that it may be

an abbreviation for Job Hazard Analysis.) Robert Thornburgh stated he did not remember seeing the other attachment labeled Insulation Specification because the scope of the project had already been agreed upon. Robert Thornburgh states that he assumed the document regarding "Insulation Specification" was sent erroneously and took no further action.

According to John Thornburgh's declaration, the "Insulation Specification" was 98 pages long. Among those 98 pages was a two-page document titled "GEA Process Engineering Inc. Standard Terms and Conditions" (the "Terms and Conditions"). The Terms and Conditions opening paragraph states

> The following terms and conditions form part of each purchase order or contract…entered into by [GEA] and of the proposal made by [GEA] for its sale of equipment and services to a purchasing customer (the "Purchaser"). These terms and conditions shall supersede, and shall be substituted for any conflicted provisions proposed by the Purchaser in its terms and conditions in its purchase order or contract.

The Terms and Conditions also includes an arbitration clause requiring all disputes arising out of the contract to be arbitrated in the City of Washington, D.C. and in accordance with the Rules of the American Arbitration Association. The Terms and Conditions include signature lines for "PURCHASER" and for GEA's representative --- neither signature line has been signed. As for the other 96 pages included in the "Insulation Specification" attachment, neither party provides a copy of those pages or fully explains what they entailed (or why they were transmitted to Robert Thornburgh).

Defendant GEA asserts that the parties agreed to arbitrate the case by virtue of the late-delivered Terms and Conditions. Plaintiff disagrees. As discussed below, this Court finds that the Terms and Conditions were not part of the parties' agreement, and thus there was no agreement to arbitrate.

## II. Discussion

A court faced with a motion to compel arbitration first considers whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the parties did not agree to arbitrate, this Court has no authority to require that they do so. *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 737 F.3d 492, 495 (8th Cir. 2013) (citing *Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006)).

"In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in *haec verba*." Plaintiff's complaint states that the parties' agreement is "made up of plaintiff's proposal and the defendant's purchase order." (#1 at ¶ 9.) Defendant argues that its Terms and Conditions became a part of the contract by virtue of their mention in the defendant's purchase order. "Such a document becomes a part of the agreement only if 'the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" *CentiMark Corp. v. Christofferson*, No. 4:11-CV-720 CAS, 2013 WL 328562, at *6 (E.D. Mo. Jan. 29, 2013) (quoting *Livers Bronze, Inc. v. Turner Const. Co.,* 264 S.W.3d 638, 643 (Mo. App. W.D. 2008)).

Neither party cites any law addressing the matter at issue here, where the Terms and Conditions were not attached to the purchase order, the purchase order was rejected by the plaintiff in favor of plaintiff's proposal, the Terms and Conditions were sent (two days later) to an individual not involved in the contract negotiation, and the Terms and Conditions were two pages of a 98-page packet of information named "Insulation Specifications" in an e-mail attachment. Furthermore, anyone who did come across the Terms and Conditions among the other apparently unrelated documents might believe

4

they were inapplicable to the Pevely Project because they refer to GEA and a "Purchaser" of GEA's equipment and services. As noted, plaintiff was not a "purchaser," but rather a subcontractor for GEA.

"[I]t must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 *Williston on Contracts* § 30:25 (4th ed.). The Eighth Circuit held that a party's "Standard Terms and Conditions" that were referenced but not attached to certain price quotes were not readily available to the other party and thus there was no meeting of the minds on the document's arbitration provisions. *Dakota Foundry*, 737 F.3d at 496 (citing *Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) ("a writing may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties")). The same is true here. Burying the "Terms and Conditions" in a 98-page attachment sent to a person uninvolved in the negotiation (and two days after the negotiation concluded) does not make the document readily available for the other side. Moreover, the document refers to the parties as GEA and a "Purchaser," which would appear to the reader to be inapplicable to the parties' agreement here. Ultimately, to the extent the purchase order was not rejected by plaintiff outright, the purchase order does not make explicit enough the identity of the Terms and Conditions applicable to the agreement. *See also State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 811 (Mo. banc 2015), *reh'g denied* (June 30, 2015) (holding that terms must be incorporated in such a way that the contracting party "could ascertain them beyond doubt" and "manifest his consent").

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel arbitration (#16) is **DENIED**.

Dated this   31st   day of August, 2015.

                                                    STEPHEN N. LIMBAUGH, JR.
                                                    UNITED STATES DISTRICT JUDGE